# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Donald R. Cowan,       )<br>  Plaintiff,              )<br>                              )<br>       v.                    )     Case No. 1:24-CV-03099-ACR<br>                              )<br>Federal Communications Commission, et al.  )<br>                              )<br>                              )<br>Defendants.            )  | |

### PLAINTIFF'S OPPOSITION TO STATE DEFENDANTS' MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))

Plaintiff, Donald R. Cowan, Pro Se, respectfully opposes the Motion to Transfer Venue filed by the State Defendants (Defendant Steven Kunzweiler, et al.), seeking to transfer this matter to the Western District of Oklahoma (WDOK).

This Court is the only proper forum that can exercise jurisdiction over the **entire, integrated controversy** because the claims are jurisdictionally anchored in the **Hobbs Act** in the D.C. Circuit and this Court **can and must** exercise personal jurisdiction over the State Defendants to resolve the unified case in the paramount **interest of justice** under 28 U.S.C. § 1404(a).

To fully brief the Court on the nature of this controversy and the legal necessity of retaining jurisdiction, the Plaintiff incorporates by reference ***"Plaintiff's Omnibus Opposition to Defendants' Motions to Dismiss"***, (ECF Doc. No. 43-1), the arguments of which are summarized below. This Opposition is further supported by the Amended Complaint (ECF No. 28), filed on October 4, 2025, which formalizes the jurisdictional ties between the parties and clarifies the federal questions at issue, rendering the Defendants' claims of 'deficiency' moot.

## I. STATEMENT OF THE UNIFIED CONTROVERSY: THE MANDATORY JURISDICTIONAL ANCHOR

The Defendants' Motions to Dismiss and/or transfer venue attempt to dismantle the Plaintiff's theory by treating the State and Federal claims as separate, when they are, in fact, two links in a single chain of constitutional injury. The Plaintiff has no other adequate remedy at law, is not "in custody," and faces the permanent, punitive loss of a federal right to a license and livelihood without Due Process, based on a state law that is subject to a serious and substantial constitutional challenge under *Bruen* and is void for vagueness.

The foundational claim in this matter is a challenge to federal agency action by the Federal Communications Commission (FCC) and the operation of federal law—a claim that is jurisdictionally controlled by the **Hobbs Act (28 U.S.C. § 2342)**.

1. **Hobbs Act Mandate:** The **Hobbs Act assigns exclusive appellate jurisdiction over FCC orders** to the U.S. Circuit Courts of Appeals, specifically including the D.C. Circuit. *See FCC v. ITT World Communications, Inc.*, **466 U.S. 463, 468 (1984)**.

2. **The Unified, Indivisible Controversy (Upstream/Downstream):** The two sets of claims—the **State Defendants' violation of 42 U.S.C. § 1983** and the **Federal Defendant's violation of the APA/Hobbs Act**—are not separate actions but constitute a **single, integrated controversy**. The State Defendants' conduct is the **upstream cause** that directly triggers the Federal Defendant's resulting action (FCC license deferral/denial), which is the **downstream effect**. This case is therefore an indivisible challenge to the direct consequences of state action on federal rights, requiring unified resolution in this Court.

3. **D.C. as the Proper Forum:** To preserve the seamless, unified judicial review contemplated by Congress, the District of Columbia is the jurisdictionally required forum because it is within the appellate stream mandated for the FCC claim. Transferring the case to the Tenth Circuit (WDOK) would destroy the controversy by improperly subjecting the FCC/APA claim to a court outside the mandated appellate path. As explicitly pleaded in the **Amended Complaint (ECF No. 28)**, the Plaintiff seeks a three-judge panel to resolve these integrated constitutional questions, a request that underscores the unique necessity of this forum for adjudicating the interplay between state criminal enforcement and federal licensing.

4. **Transfer Destroys Statutory Scheme:** Transferring this unified case to a Federal Court in the Tenth Circuit would subject the FCC/APA claim to a court that **cannot properly adjudicate the claim while preserving the exclusive appellate jurisdiction of the D.C. Circuit**. [1] The Tenth Circuit cannot grant a remedy on the APA claim without functionally circumventing the exclusive Hobbs Act mandate, thus **destroying the integrity of the statutory review scheme**. [2]

---

[1] Mountain States Tel. and Tel. Co. v. P.U.C. of State of Colo., 624 F.2d 155, 158 (10th Cir. 1980) (holding that 28 U.S.C. § 2342 provides the exclusive means for review of a final FCC order).

[2] The recent Supreme Court decision concerning the scope of the Hobbs Act, *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 603 U.S. 418, 145 S.Ct. 1928 (2025), is readily distinguishable and does not cure the jurisdictional defect of the proposed transferee court. *McLaughlin* holds only that the Hobbs Act **does not preclude a district court from independently interpreting a statute** in a subsequent **civil enforcement proceeding** (*id.* at 1935). The Plaintiff's case is fundamentally different: it is a direct, **pre-enforcement challenge to "determine the validity" or "set aside"** a final FCC policy (**ECF Doc. 28, Counts 1–3** [Amended Complaint]). Critically, the Supreme Court **reaffirmed** that the Hobbs Act reserves the power to "enjoin, set aside, suspend... or to **determine the validity** of" final agency orders **exclusively for the Courts of Appeals** (145 S.Ct. at 1932; *see also* **28 U.S.C. § 2342(1)**). Accordingly, transferring this unified controversy to the Western District of Oklahoma (a district court outside the D.C. Circuit) would unacceptably **fragment the litigation** and destroy the

**II. SUMMARY OF THE ARGUMENT: DENYING TRANSFER IN THE INTEREST OF JUSTICE**

A transfer of venue under 28 U.S.C. § 1404(a) is only appropriate "[f]or the convenience of parties and witnesses, in the **interest of justice**." The interests of justice overwhelmingly compel this Court to retain jurisdiction because transferring the case would violate the principle of unified judicial resolution and create a constitutional and procedural deadlock.

The Defendants' Motion to Transfer must be denied because it fails to address the fundamental constitutional and procedural deadlock created by the combined actions of Federal and State actors. The Plaintiff's action constitutes a **single, unified, two-front constitutional attack** designed to resolve an unlawful procedural entanglement: **(1)** a challenge to the **State's enforcement** of an allegedly unconstitutional statute (*Bruen*/Vagueness) and **(2)** a challenge to the **Federal Government's denial** of a statutory benefit (Hobbs Act/APA). This unified two-front attack is the **only available avenue** to vindicate the Plaintiff's fundamental liberties.

**A. Supremacy Clause Power Mandates D.C. Jurisdiction**

This case presents a direct conflict between a state criminal judgment and the federal statutory and regulatory framework governing the issuance of federal licenses. The Court is required to exercise its **Supremacy Clause** power to ensure that state action does not unlawfully nullify or interfere with a federal right, a duty best fulfilled by the Federal court closest to the Federal Defendant (the FCC) and the designated appellate stream.

**B. Judicial Economy Requires Unified Resolution**

The Plaintiff presents a legally sufficient challenge to both the FCC's policy (a structural challenge and unconstitutional prior restraint) and the State statute (a **dual constitutional**

---

primary claim by moving it to a forum that lacks the necessary statutory jurisdiction to grant the requested relief of invalidating the federal policy.

**challenge under *Bruen* and is void for vagueness**). Resolving this issue requires the presence of both the Federal and State Defendants in a single forum. Accordingly, transferring this unified controversy to the Western District of Oklahoma (a district court outside the D.C. Circuit) would unacceptably fragment the litigation and destroy the primary claim by moving it to a forum that lacks the necessary statutory jurisdiction to grant the requested relief of invalidating the federal policy.[3]

**C. Article III Standing: Redressability is Achieved by a Judicial Precondition**

The State Defendants' challenge to Article III Standing is precluded by the very nature of this unified controversy. The Plaintiff's injury—the perpetual denial of a federal license—is a single, unified legal barrier that requires two steps to dismantle: a ruling against the State and a review of the FCC's action.

1. **Traceability (Upstream Cause):** The injury is traceable to the state statute, not merely the FCC. The Oklahoma Attorney General's continued defense of the conviction is the **upstream, constitutional cause** of the Plaintiff's injury. The FCC's action is merely the **downstream, administrative mechanism**. Traceability is established because, but for the continued legal validity of the state conviction, the FCC would have no predicate for its denial.

2. **Redressability (Judicial Precondition):** Redressability is not defeated simply because the Court cannot order the AG to grant a federal license. Instead, the Court's issuance of a **Declaratory Judgment** finding the state statute unconstitutional serves as a **mandatory judicial precondition** for the Federal Defendant's compliance with the

---

[3] The Hobbs Act further reinforces the necessity of venue in the D.C. Circuit's direct appellate stream by stipulating the Plaintiff's entitlement to a complete appellate record, produced by the District Court, for review of the agency's final order. Fragmenting the case across two circuits would severely impair the D.C. Circuit's ability to efficiently review the comprehensive record.

Administrative Procedure Act (APA). The moment the constitutional predicate (the conviction) is destroyed by this Court's order against the State Defendants, the FCC's denial automatically becomes arbitrary, capricious, and contrary to law. The Court thus redresses the injury by legally compelling the Federal Defendant to act through the unified nature of the claims.

**D. Waiver of Constitutional Remedy Contravenes the Interest of Justice**

The claims against the State Defendants involve a prospective challenge (*Ex Parte Young* claim) to an unconstitutional state statute. Because the Plaintiff's state and federal habeas remedies are permanently **BARRED**, transferring or dismissing the claims would unconstitutionally extinguish the final available avenue for the vindication of a fundamental Second Amendment liberty. This result is contrary to the "interest of justice" and the preservation of constitutional rights.

**E. The Personal Jurisdiction Defense Fails**

As demonstrated in Section III, the Court possesses or must exercise personal jurisdiction over the State Defendants. Therefore, the primary legal justification for transfer—that D.C. cannot obtain jurisdiction over all parties—is unfounded.

**III. THE COURT CAN EXERCISE PERSONAL JURISDICTION OVER STATE DEFENDANTS**

The State Defendants' primary argument for transfer—that this Court lacks Personal Jurisdiction (PJ) over them—is without merit. This Court can and should exercise PJ over them for the D.C. claims under two separate and sufficient legal theories: **Specific Jurisdiction (The Effects Test)** and **Ancillary Personal Jurisdiction**.

**A. Specific Jurisdiction via the *Calder* "Effects Test"**

Personal Jurisdiction over the State Defendants is established because their actions in Oklahoma were **purposefully aimed** at the District of Columbia, causing a foreseeable, traceable injury in this forum (D.C. Cir./D.C. Dist.).

1. **Prospective Intentional Action:** The State Defendants intentionally prosecuted the Plaintiff on state charges despite knowing he was a **prospective** FCC license holder/applicant.

2. **Express Aiming at the Forum:** This prosecution was a direct and express effort to interfere with the Plaintiff's unique federal entitlement and status as a prospective federal licensee/applicant. This action was purposefully aimed at **nullifying the Plaintiff's federal right** to apply for and hold a license, a right which is exclusively regulated and administered by the FCC, **headquartered solely in this District.** The **Amended Complaint (ECF No. 28)** details how the State Defendants' actions were 'purposefully aimed' at nullifying a federal right. By naming the Defendants in their official capacities under the *Ex Parte Young* doctrine, the Amended Complaint establishes a clear federal hook for personal jurisdiction in this District to prevent ongoing constitutional injury.

3. **Tortious Injury in D.C. (Downstream Effect):** The State Defendants' conduct caused a direct, **tortious injury** that materialized in the District of Columbia—namely, the FCC's formal and indefinite deferral of the federal license application, which is the **downstream effect** of the State Defendants' **upstream** prosecution.

## B. Ancillary Personal Jurisdiction: Resolving the Unified Case

Alternatively, and independently, the doctrine of **Ancillary (Pendent) Personal Jurisdiction** allows this Court to assert PJ over the State Defendants to ensure a full and efficient resolution of the single controversy:

1. **Judicial Economy:** Dismissing the State Defendants would necessitate the filing of **two separate lawsuits** in two different Circuits/Districts (one in D.C. against the FCC and one in WDOK against the State Defendants) to resolve a single, integrated "Case and Controversy."

2. **Indispensable Parties:** The State Defendants are indispensable to the resolution of the federal constitutional question against the FCC.  The **Amended Complaint (ECF No. 28)** further demonstrates that the State Defendants are indispensable because the FCC's 'character' inquiry—the downstream effect—is legally tethered to the 'upstream' constitutionality of the Oklahoma statute. One cannot be adjudicated without the other.

3. **Interest of Justice:** Where bifurcating the action would lead to **gross judicial inefficiency** and the **risk of inconsistent adjudications**, the "interest of justice" mandates that the Court exercise PJ over the ancillary parties to achieve complete relief.

## IV. THE MOTION IS FILED FOR AN IMPROPER PURPOSE: A CONCERTED EFFORT IN VIOLATION OF FED. R. CIV. P 11(b)(1)

The **State Defendants' Motion to Transfer Venue**, supported by the strategic alignment of the Federal Defendant, is not submitted for the permissible purposes of 28 U.S.C. § 1404(a), but rather for the **improper, concerted purpose of securing a hostile litigation advantage** that violates Rule 11(b)(1).  The timing and objective of this motion reveal a bad-faith effort by **both sets of Defendants** to evade this jurisdiction by intentionally destroying the unified "Case and Controversy" they themselves created.[4]

---

[4] The State Defendants' Motion to Transfer Venue is a functionally dispositive motion due to its inevitable and intended consequence of securing the immediate dismissal of the Federal APA/FCC Claim in the Tenth Circuit. By filing this motion without requesting a pre-motion conference as required by this Court's Standing Order for Dispositive Motions, the Defendants have attempted to end-run a mandatory judicial requirement. **This is particularly egregious given that the Federal Defendant was previously admonished by this Court for failing to**

The combined effort to transfer the case constitutes an improper purpose under Rule 11(b)(1) because it is designed to cause unnecessary delay, needlessly increase the cost of litigation, and coerce the *pro se* Plaintiff into abandoning his claims.  The Motion does not serve judicial economy; it is a tactical attempt to **fragment the unified controversy** that the Defendants have intentionally and sequentially manufactured.

The procedural history confirms the Defendants' abusive, coordinated motive, subjecting the *pro se* Plaintiff to a complete, self-serving cycle of jurisdictional abuse:

1. **The Oklahoma Origin and Forced Transfer:** The Plaintiff originally filed a similar APA/Mandamus Complaint in the U.S. District Court for the Western District of Oklahoma (W.D.O.K.).  The **Federal Defendants** successfully argued that the W.D.O.K. lacked subject-matter jurisdiction under the Hobbs Act (28 U.S.C. § 2342), effectively **forcing the Plaintiff** to file this matter in the D.C. District Court to secure the appropriate appellate stream and unify the claims.

2. **The Forced Escalation and Unified Case:** Once the Plaintiff secured the proper venue in D.C., the **Federal Defendants** immediately filed a Motion to Dismiss (MTD) again invoking the Hobbs Act, compelling the Plaintiff to amend his complaint and join the State claims to create the current "unified constitutional controversy" to avoid outright dismissal.

3. **Completing the Concerted Cycle of Abuse:** Having successfully used the Hobbs Act to push the Plaintiff into D.C. and force the unification of the state and federal claims, the

---

**comply with this exact pre-motion notice procedure (see Minute Order, 9/4/2025 and ECF Doc. No. 11 §7(f) at 11). This circumvention is itself compelling evidence of improper purpose**, as it seeks to deny the Court the benefit of resolving the dispositive nature of the venue question efficiently before the expense and delay of formal briefing, in violation of the spirit of Fed. R. Civ. P. 1.

**State Defendants** now seek to transfer the unified case back to the W.D.O.K., the very venue the **Federal Defendants** previously deemed jurisdictionally incompetent. This Motion to Transfer is the final step in the circular jurisdictional hot potato—a **concerted, cynical attempt to manufacture the case's fragmentation** by sending the matter to a circuit where the federal claim is known to be subject to immediate dismissal. The proper purpose of litigation under FED. R. CIV. P. 1 is violated when litigants use the judicial process to subject the opposing party to a needless, self-created cycle of jurisdictional challenge and re-challenge.

4. **Improper Purpose: Securing Outright Dismissal to Fragment the Action** The transfer is a hostile and disruptive tactic intended to immediately secure outright dismissal of the Federal APA/FCC claim under the Hobbs Act in a less-favorable appellate circuit (the Tenth Circuit). The **Defendants' concerted goal is not convenience**, but the prejudicial dismemberment of this action by leveraging the Tenth Circuit's stricter view of the Hobbs Act to achieve a **constructive dismissal** of the federal claim.

5. **Violation of Judicial Economy and Rule 11(b)(1)** The foreseeable and intended consequence of this transfer is the **destruction of the unified statutory review scheme**, which forces the Plaintiff to litigate the same controversy across two separate federal actions in two different circuits, thereby needlessly increasing the cost of litigation and causing unnecessary delay. This transfer, therefore, leads to a violation of FED. R. CIV. P. 1 by:

   - **Causing Unnecessary Delay:** Requiring the Plaintiff to re-file his APA/FCC claim (via Petition for Review) in the D.C. Circuit while his State claims remain pending in Oklahoma.

- **Needlessly Increasing Cost:** Forcing the parties to litigate the same core constitutional controversy across two different federal venues.

6. **The Transfer Contradicts the "Interest of Justice"** An action that results in the destruction of a unified case and multiplies litigation is fundamentally contrary to the "Interest of Justice" factor required under 28 U.S.C. § 1404(a).  The Defendants' collective failure to disclose this inevitable, costly fragmentation in their motion is evidence that the filing was presented for an **improper, collusive purpose** that violates this Court's Standing Orders and preference for judicial economy (ECF Doc. No. 11).

## V.  NOTICE OF INTENT TO SEEK INTERLOCUTORY REVIEW: THE TRANSFER AS AN APPEALABLE COLLATERAL ORDER

Should this Court be inclined to grant the State Defendants' Motion to Transfer, Plaintiff respectfully provides notice that such an order would necessitate immediate appellate review to prevent a permanent "Jurisdictional Divorce" that would leave the Plaintiff with a right without a remedy.  A transfer in this unique context is not a mere matter of convenience, but a final determination of the Court's ability to resolve a unified controversy.

### A. The Transfer Constitutes an Appealable Collateral Order

Under the *Cohen* collateral order doctrine, an order is immediately appealable if it conclusively determines a disputed question separate from the merits that is effectively unreviewable on appeal from a final judgment.  Because the FCC claim is jurisdictionally anchored in the D.C. Circuit by the **Hobbs Act**, a transfer of the state-law "upstream cause" to the Tenth Circuit would "conclusively determine" the impossibility of a unified resolution.  Such

an order would be effectively unreviewable later, as the two halves of this integrated controversy would be balkanized across two different federal circuits with potentially conflicting rulings. [5]

**B. Certification of Controlling Question of Law under 28 U.S.C. § 1292(b)**

Granting a transfer would involve a **"controlling question of law"** for which there is "substantial ground for difference of opinion"—specifically: *Whether the Hobbs Act's grant of exclusive jurisdiction to the D.C. Circuit requires a unified venue for constitutional challenges to state-law triggers that form the mandatory predicate for federal agency action.* Plaintiff intends to move for certification of this question for immediate interlocutory appeal to the D.C. Circuit, as resolving this jurisdictional conflict now is the only way to "materially advance the ultimate termination of the litigation".

**C. Preservation of Jurisdiction via Writ of Mandamus**

Because this Court possesses "exclusive institutional competence" to review the FCC's policy alongside its constitutional preconditions, a transfer would represent an abdication of mandatory jurisdiction. Such a clear abuse of discretion would compel the Plaintiff to seek a

---

[5] **NOTICE OF INTENT TO SEEK INTERLOCUTORY REVIEW:** Any order of this Court that fragments this unified controversy—either by transferring the State Defendants or dismissing claims essential to the federal licensing injury—would be subject to immediate appellate review under the **Collateral Order Doctrine**. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949) (authorizing immediate appeal for orders that "conclusively determine" an issue separate from the merits that is "effectively unreviewable" at the end of trial); *see also Cohen v. United States*, 578 F.3d 1, 12 (D.C. Cir. 2009) (recognizing federal court authority to resolve constitutional conflicts that function as a total bar to a citizen's exercise of federal rights). Such an order would constitute an "abdication of mandatory jurisdiction" over the FCC claims jurisdictionally anchored in this District by the **Hobbs Act (28 U.S.C. § 2342)**. *See In re Scott*, 709 F.2d 717, 719 (D.C. Cir. 1983) (mandamus appropriate where district court fails to consider the "interest of justice" under § 1404(a)); *see also FCC v. ITT World Comm.*, 466 U.S. 463, 468 (1984) (confirming exclusive circuit review for agency actions). Furthermore, Plaintiff would move for certification of a "controlling question of law" under **28 U.S.C. § 1292(b)** to prevent the "legal impossibility" of bifurcated litigation. *See Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 15 (D.D.C. 2000) (recognizing that fragmented litigation can lead to "inconsistent results").

**Writ of Mandamus** from the D.C. Circuit to preserve the integrity of the statutory review scheme and stay the transfer of the record.

### D. Resulting Judicial Inefficiency

Granting a transfer that will be immediately stayed and challenged on appeal is the antithesis of the "just, speedy, and inexpensive" resolution required by **FED. R. CIV. P. 1**. To avoid this procedural deadlock and a secondary "war of attrition" in the appellate court, the interest of justice demands that this Court retain jurisdiction over the entire, integrated controversy.

### VI. CONCLUSION

The State Defendants' Motion to Transfer Venue under 28 U.S.C. § 1404(a) must be **DENIED**. The **Amended Complaint (ECF No. 28)** has cured any purported jurisdictional defects, and the D.C. District Court remains the only forum capable of providing the complete relief sought. The D.C. District Court is the jurisdictionally required forum for the Hobbs Act claim, can properly exercise personal jurisdiction over the State Defendants, and is the only forum that can deliver the unified, complete judicial resolution demanded by the **interests of justice** and the **Supremacy Clause**.

### VII. PRAYER FOR RELIEF

*WHEREFORE*, Plaintiff respectfully requests that the Court:

1. **DENY** the State Defendants' Motion to Transfer Venue in its entirety; and
2. **ADOPT** the Findings of Fact, Conclusion of Law, and all Requested Relief set forth in the Plaintiff's Proposed Order.

Respectfully Submitted,

Dated: **December 23, 2025**

*/s/ Donald R. Cowan*
Donald R. Cowan, B.S.
Criminal Justice Administration & Ethics
*(Constitutional & Procedural Law Focus)*
Pro Se for the Plaintiff
3768 SE 48th PL, Oklahoma City,
Oklahoma 73135 | (405) 708-1756
Email: Cowan.Radio@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on this **December 23, 2025**, a true and correct copy of the foregoing ***"PLAINTIFF'S OPPOSITION TO STATE DEFENDANTS' MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))"*** was served upon all counsel of record in this case via the Court's Electronic Case Filing (ECF) system. The ECF system will generate and send a Notice of Electronic Filing (NEF) to the following parties and their counsel:

**Jesse S. Ogle** | Assistant Oklahoma Attorney General
Oklahoma Attorney General, OK Bar No. 34275
Attorney for Viki Behenna and Steven Kunzweiler
313 NE 21st Street, Oklahoma City, OK 73105
Telephone: 405.522.2921| jesse.ogle@oag.ok.gov

**Derrick A. Petit** | Assistant United States Attorney
Civil Division, U.S. Attorney's Office, D.C. No. 144466
Attorney for the Federal Communications Commission
601 D Street, NW, Washington, D.C. 20530
Derrick.Petit@usdoj.gov
(202) 252-7269

                                        ***/s/ Donald R. Cowan***
                                        Donald R. Cowan, B.S.
                                        Criminal Justice Administration & Ethics
                                        *(Constitutional & Procedural Law Focus)*
                                        Pro Se for the Plaintiff
                                        3768 SE 48th PL, Oklahoma City,
                                        Oklahoma 73135 | (405) 708-1756
                                        Email: Cowan.Radio@gmail.com