# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Donald R. Cowan, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:24-CV-03099-ACR |
| | ) | |
| Federal Communications Commission, et al. | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION FOR ENTRY OF FINDINGS REGARDING THE RULE 5.1**

**CONSTITUTIONAL QUESTION AND RIPENESS OF SUMMARY JUDGMENT**

Plaintiff Donald R. Cowan, *pro se*, respectfully moves this Court for an Order entering

formal findings that the State of Oklahoma has failed to intervene or defend the constitutionality

of **21 O.S. § 711** within the mandatory period prescribed by **Federal Rule of Civil Procedure**

**5.1(c)** and **28 U.S.C. § 2403**.

## I.  PROCEDURAL HISTORY

1. On **November 4, 2025**, Plaintiff formally served Defendant and Authorized Intervenor

   Gentner Drummond, the Attorney General of Oklahoma, with the Summons and

   Amended Complaint [ECF No. 36]. [1]

---

[1] See *Oklahoma ex rel. Edmondson v. Pope*, 516 F.3d 1214, 1216 (10th Cir. 2008) (emphasizing that Rule 5.1 is designed to ensure the State has an opportunity to respond before a statute is held unconstitutional); cf. *People for the Ethical Treatment of Animals v. Gittens*, 396 F.3d 416, 423 (D.C. Cir. 2005) (discussing the court's authority to proceed when procedural notice requirements are met).

2.  The Amended Complaint presents a dual constitutional challenge to **21 O.S. § 711** (**Count 4**), asserting it is substantively void under the Second Amendment and facially void for vagueness under the Due Process Clause.

3.  Pursuant to **Rule 5.1(c)**, the State of Oklahoma was afforded 60 days from the date of service to intervene.  This window expired on **January 5, 2026**, with no substantive defense filed. [2]

## II.  PLAINTIFF'S DUAL CONSTITUTIONAL CHALLENGE TO 21 O.S. § 711

The Plaintiff's challenge to 21 O.S. § 711 is mandatory for this Court to address.  The statute is unconstitutional on dual grounds: it is substantively void under the Second Amendment and the *Bruen* historical test for imposing an unconstitutional "duty to retreat," and it is facially void for vagueness under the Due Process Clause.

The State Defendants' **Motion to Transfer Venue [Doc. 45]** is a procedural red herring. [3] Its application here would unconstitutionally render the Second Amendment a second-class right

---

[2] The State Defendants' reliance on the February 2026 "Answer" deadline is a procedural *ignis fatuus*. While Federal Rule of Civil Procedure 15(a)(3) governs the timeline for responsive pleadings to an Amended Complaint, it does not toll or reset the independent, mandatory 60-day window prescribed by **Fed. R. Civ. P. 5.1(c)** and **28 U.S.C. § 2403**. Rule 5.1 is a specific invitation to the State as a *sovereign* to defend the structural integrity of its statutes; it is not a mere litigation deadline subject to the "reset" of an amended pleading. *See Oklahoma ex rel. Edmondson v. Pope*, 516 F.3d 1214, 1216 (10th Cir. 2008) (emphasizing that the Rule 5.1 period is designed to ensure the State has an opportunity to respond *before* a statute is held unconstitutional). Because the State was served on November 4, 2025, the 60-day window to intervene and provide a *Bruen* historical analysis or a vagueness rebuttal expired on January 5, 2026. Any subsequent "Answer" filed in February addresses the *facts* of the Amended Complaint but cannot retroactively cure the State's default on the *constitutional question* of law.

[3] The State Defendants' Motion to Transfer Venue [Doc. 45] constitutes a procedural "red herring" intended to divert judicial resources away from a ripe constitutional challenge and a Rule 5.1 default. In the D.C. Circuit, transfer is inappropriate when the "center of gravity" of the litigation is the administrative policy or inaction of a federal agency located within the District. *See* **In re Scott**, 709 F.2d 717, 720 (D.C. Cir. 1983) (holding that transfer is improper when a case involves national agency policy and "administrative focus"); *cf.* **Byrum v. Winter**, 783 F. Supp. 2d 117, 125 (D.D.C. 2011). Because the "operative engine" of Plaintiff's injury is the

by foreclosing all avenues for vindication of a fundamental liberty.  Accordingly, the Court must

exercise its Supremacy Clause authority under *Ex parte Young* to grant prospective relief against

the State Defendants to terminate the ongoing chilling of the Plaintiff's fundamental rights.

**A. Summary of Second Amendment Claim and the Bruen Test**

The state conviction rests upon an unconstitutional standard that criminalized the

Plaintiff's exercise of his Second Amendment right to bear arms outside the home.  By making

the use of a firearm an express element of the felony charge [Doc. 16, Judicial Notice 6-6-2025],

the State transformed this into a regulation of armed conduct subject to the historical scrutiny of

*Bruen*. [4] The State has failed to prove a historical parallel from the Founding or Reconstruction

eras that supports its restrictive "duty to retreat" standard.  Under the refined standard in *United*

*States v. Rahimi*, 144 S. Ct. 1889 (2024), the State must identify a historical tradition of

regulation that is 'relevantly similar' in its 'how' and 'why'.  Because the State has failed to

provide a 'historical twin' or even a comparable analogue for criminalizing self-defense under its

'duty to retreat' standard within the Rule 5.1 window, the statute must be declared a constitutional

nullity by operation of law.

---

FCC's ongoing "indefinite deferral" in Washington D.C., and because the State has already
waived its defense of the underlying statute by failing to intervene within the Rule 5.1 window,
the Motion to Transfer is a tactical attempt to "reset the clock" through jurisdictional
manipulation—a practice disfavored in this Circuit. *See **In re Apple, Inc.**, 602 F.3d 909, 912
(D.C. Cir. 2010)* (evaluating whether transfer would serve the interests of justice or merely
facilitate delay).

[4] See *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24 (2022) ('the government must
affirmatively prove that its firearms regulation is part of the historical tradition that delimits the
outer bounds of the right to keep and bear arms'). In the D.C. Circuit, this burden is strictly
applied to the government defender of the statute. See *Wrenn v. District of Columbia*, 864 F.3d
650 (D.C. Cir. 2017).

**B. Facial Vagueness and Structural Contradictions**

21 O.S. § 711(3) is facially unconstitutional because the term "unnecessarily" is a subjective, undefined term that lacks any clear, objective measure. [5] **The statutory text poses a fundamental due process question that the State has failed to answer: How can a citizen know what conduct is "unnecessarily" performed when the state provides no definition**? This ambiguity is the quintessential definition of a void-for-vagueness violation. This ambiguity creates an unacceptable chilling effect on the right to self-defense. Furthermore, the statute's inclusion of killing "by means of a dangerous weapon" as an independent basis for a First Degree charge weaponizes a Constitutional Right, punishing the mere use of a firearm rather than the *mens rea* of the actor.

The statute is further substantively void because it is structurally incoherent compared to its federal counterpart, 18 U.S.C. § 1112, and acts as a tool of unconstitutional coercion. Oklahoma's arbitrary grading conflates disparate legal theories into a single, severe category of First Degree Manslaughter. While the Federal model (18 U.S.C. § 1112) classifies unintentional killings as a lesser Involuntary Manslaughter, Oklahoma subjects these same low-culpability acts to life imprisonment. This arbitrary grading is compounded by the mandatory application of the Mary Rippy Violent Crime Registration Act, which imposes a lifetime of public infamy and structural disability for acts of self-defense. [6] This arbitrary grading fails to provide fair notice of the gravity of the conduct, violating Due Process.

---

[5] Cf. *Johnson v. United States*, 576 U.S. 591, 597 (2015) (holding that statutes requiring a 'qualitative standard' that is not tied to any 'objective' conduct are unconstitutionally vague). The D.C. Circuit has applied this to prevent 'arbitrary enforcement' and 'subjective' legal standards. See *Act Now to Stop War & End Racism Coal. v. District of Columbia*, 846 F.3d 391, 410 (D.C. Cir. 2017).

[6] See Oklahoma Mary Rippy Violent Crime Registration Act, 57 O.S. §§ 591–599. The Act mandates that any individual convicted of a "violent crime" as defined in 57 O.S. § 592—which

### III.  THE RULE 5.1 CHALLENGE EMBEDDED IN COUNT 2: UNCONSTITUTIONAL PRIOR RESTRAINT

The Rule 5.1 constitutional challenge to the Oklahoma statute is inextricably embedded into **Count 2** of the Amended Complaint.  Plaintiff asserts that the FCC's use and enforcement of this void Oklahoma statute has facilitated an unconstitutional **Prior Restraint** on his First Amendment protections and activities.  The 'Unconstitutional Conditions' doctrine [Doc. 51] bars the FCC from doing indirectly what it cannot do directly.  By using a 'constitutional taint' derived from a void state statute (21 O.S. § 711) as the sole basis for an indefinite licensing delay, the FCC has unconstitutionally conditioned the Plaintiff's First Amendment speech rights upon the forfeiture of his Second Amendment right to self-defense. [7] This creates an unconstitutional 'Moral Veto' over protected speech that requires immediate judicial intervention in this District.

Furthermore, the Plaintiff has formally noticed the Commission—and hereby notifies this Court—that this litigation constitutes a 'body of evidence' that the Commission is statutorily mandated to officially notice within the meaning of 47 U.S.C. § 309.  This notice creates a statutory estoppel against the FCC's 'indefinite deferral' strategy.  By linking this Article III challenge to the Section 309 administrative record, the Plaintiff has ensured that the Commission

---

includes First Degree Manslaughter under 21 O.S. § 711—must register for a period of ten (10) years to life. This mandatory registration constitutes a separate, ongoing state-imposed "structural disability" that operates as a permanent "constitutional taint," facilitating the FCC's indefinite licensing deferral.

[7] See Order at 1, ECF No. 22 (July 10, 2025) (characterizing the FCC's administrative posture as, **"essentially, don't call us, we'll call you"**). This Court's observation of the "don't call us" nature of the FCC's response identifies the functional equivalent of a **pocket veto**. In the First Amendment context, such an "indefinite" and standardless delay constitutes a *de facto* finality that bypasses the mandatory hearing requirements of 47 U.S.C. § 309(e). See *Telecomm. Research & Action Ctr. v. FCC (TRAC)*, 750 F.2d 70, 80 (D.C. Cir. 1984) (holding that agency delay is "unreasonable" when it is governed by "no rhythmic track but is instead a passive and desultory process").

cannot grant or deny the license without addressing the 'Sovereign Default' of the State and the 'Unified Architecture' of this case.  The FCC is now on notice that its reliance on 21 O.S. § 711 is a knowing use of a constitutional nullity to facilitate a Prior Restraint.  [8]

The State Defendants have effectively admitted to the Plaintiff's Unified Architecture theory by waiver [Doc. 60, 61].  Despite multiple filings by the Plaintiff [Doc. 48, 51, 62] identifying the Hobbs Act as a jurisdictional anchor and the state statute as the "operative engine" of a federal injury, the State has failed to rebut these specific points of law, choosing instead to rely on a "Silo Fallacy" that ignores the mandatory interplay between federal licensure and the challenged state statute.

The State Defendants' attempt to dismiss the Plaintiff's previous briefing as a "canned, pre-written response" [Doc. 60] is a tactical admission of their own failure to address the merits. Plaintiff's ability to respond rapidly to the Motion to Transfer was not due to a lack of diligence, but rather the internal consistency and foreseeability of the legal issues.  The State's reliance on a "Silo Fallacy"—which attempts to surgically sever the state statute from the federal licensure injury—is a predictable procedural error that the Plaintiff's "Unified Architecture" theory was specifically designed to rebut.[9]

---

[8] See 47 U.S.C. § 309(a) (requiring the Commission to determine if the "public interest, convenience, and necessity" will be served by the granting of such application). Plaintiff's Section 309 notice ensures that the "public interest" determination now includes the judicial determination of whether the FCC may lawfully incorporate a void state felony conviction into its character qualifications.

[9] The State's characterization of Plaintiff's briefing as "canned" ignores the fact that a pro se litigant who has correctly identified the "operative engine" of his own injury (the state statute) and the mandatory jurisdictional anchor (the Hobbs Act) is naturally prepared for predictable procedural challenges to venue.  The State's focus on the timing of the response, rather than the substance of the Rule 5.1 default, further underscores the ripeness of this controversy for summary adjudication.

By relying on a structurally void and unconstitutional state statute to justify the "indefinite deferral" or denial of a broadcast license, the FCC is using the State's unconstitutional act as a tool of federal administrative censorship.[10]  The Commission cannot 'wait' on a void statute.  Every day the FCC defers based on 21 O.S. § 711, it is actively maintaining a Prior Restraint on Plaintiff's Amateur Radio transmissions, which are protected First Amendment activities under 47 C.F.R. § 97.111 and § 97.117.  This administrative inheritance of a constitutional nullity creates a structural barrier to speech that requires immediate judicial intervention.  This "Administrative Inheritance" [11] of a void statute creates a content-neutral but functionally absolute barrier to Plaintiff's First Amendment speech, constituting a Prior Restraint that cannot survive judicial scrutiny. [12]

---

[10] The amateur radio license is a prerequisite for engaging in regulated speech. 47 C.F.R. § 97.111 authorizes the specific transmissions (i.e., communication) essential to the hobby, and 47 C.F.R. § 97.117 permits international communications. The denial of the license therefore acts as a permanent, content-neutral prior restraint on these protected First Amendment activities, demanding a higher level of scrutiny than a typical administrative action. While there is no inherent right to a license, there is a fundamental right to be free from Prior Restraints and a statutory right to a § 309(e) hearing. The FCC cannot use a constitutional nullity to bypass the First Amendment and the mandatory requirements of the Communications Act.

[11] The concept of "Administrative Inheritance" describes the FCC's adoption of a state-level constitutional nullity as the sole predicate for a federal administrative injury. The D.C. Circuit has long held that federal agencies cannot insulate their actions from constitutional scrutiny by relying on external or "inherited" standards that are themselves structurally void. *See **Ruggiero v. FCC**, 278 F.3d 1323, 1329 (D.C. Cir. 2002)* (holding that agency enforcement of a "draconian" disqualification—even one mandated by statute—must yield to constitutional protections); *cf. **Mendoza v. Perez**, 754 F.3d 1002, 1012 (D.C. Cir. 2014)* (establishing that federal agency action "caused" by reliance on outside standards creates a redressable Article III injury). Furthermore, where an agency defers a license based on a state law that is facially void under ***Johnson v. United States***, 576 U.S. 591 (2015) and ***N.Y. State Rifle & Pistol Ass'n v. Bruen***, 597 U.S. 1 (2022), it is no longer exercising "discretion," but is facilitating a **Prior Restraint** through unreasonable delay. *See **Telecomm. Research & Action Ctr. v. FCC (TRAC)**, 750 F.2d 70, 80 (D.C. Cir. 1984)* (emphasizing that agency delay is unreasonable when it lacks a valid, discretional legal basis).

[12] The FCC's "indefinite deferral" functions as a de facto denial and a content-neutral Prior Restraint. By placing an indefinite hold on the application without the procedural safeguards of a

The FCC's 'indefinite deferral' is a direct manifestation of **Administrative Mission Creep**, where the agency has drifted from spectrum management into substantive moral policing. The Court has already noted the desultory nature of this posture, characterizing the FCC's response to the Plaintiff as: '**essentially, don't call us, we'll call you**'.  This 'don't call us' stance confirms that the agency has inherited a 'jurisdictional mess' by tethering federal licensure to a state-law nullity that the State has now failed to defend under Rule 5.1. [13]

Furthermore, the Federal Defendant's historical reliance on "exhaustion" [Doc. 25 at 12] is a procedural circularity; under 47 U.S.C. § 309(e), the Commission has a mandatory, non-discretionary duty to set a license for a formal hearing if it cannot grant it.  By refusing to either grant the license or trigger the § 309(e) hearing [14], the FCC is effectively attempting to "exhaust" the Plaintiff out of his Article III right to judicial review—a tactic that strips the agency of the standard exhaustion defense. [15]

---

timely hearing, the Commission suppresses protected First Amendment expression before it occurs.

[13] *Cowan v. FCC*, No. 1:24-cv-3099 (ACR), ECF No. 22, at 1 (D.D.C. July 10, 2025) (Order denying appointment of counsel but identifying the "indefinite" and desultory nature of the FCC's application review). See also Count 1 Amended Complaint ECF No. 28, bringing a Non-Delegation and Major Question Doctrine Challenge to the FCC Expansion of its Character Policy to non-nexus regulatory conduct.

[14] 47 U.S.C. § 309(e) mandates that if the Commission cannot find that a grant of an application would serve the public interest, it 'shall formally designate the application for hearing.' See also *Telecomm. Research & Action Ctr. v. FCC (TRAC)*, 750 F.2d 70, 79 (D.C. Cir. 1984) (establishing the 'TRAC factors' for evaluating whether agency delay is unreasonable and warrants judicial intervention under the APA).

[15] Plaintiff notes that the Federal Defendant's Historical reliance on "exhaustion" is a procedural circularity; under 47 U.S.C. § 309(e), the Commission has a mandatory, non-discretionary duty to set a license for a formal hearing if it cannot grant it. By refusing to either grant the license or trigger the § 309(e) hearing, the FCC is effectively attempting to "exhaust" the Plaintiff out of his Article III right to judicial review—a tactic that strips the agency of the standard exhaustion defense.

## IV. DEMAND FOR FULL FINDING AND STATEMENT OF FACT AND LAW

Plaintiff hereby moves and demands that this Court issue a full finding and statement of fact and law in support of its ruling. This comprehensive record is necessary to establish a clear basis for proper appellant review and to ensure the preservation of the constitutional issues raised herein for any higher court.

## V. CONCLUSION AND RELIEF REQUESTED

The State Defendants' attempt to transfer venue [Doc. 45] while acknowledging "actual notice" [Doc. 65, 66] constitutes a voluntary appearance. Transferring this case would invite a 'clear error' of law and create an impermissible 'Jurisdictional Divorce'. Under *EPA v. Calumet Shreveport Refining, L.L.C.* (2025), even regionally applicable actions must remain in the D.C. forum if they involve a 'determination of nationwide scope'—such as the FCC's Character Policy. Prioritizing convenience over the structural integrity of this 'Unified Architecture' would constitute an abuse of discretion, as the interlinked state triggers and 'downstream' federal consequences must be adjudicated together to prevent inconsistent regional outcomes.

*Wherefore*, Plaintiff respectfully requests that the Court enter findings that: (1) the Rule 5.1(c) period has expired; (2) the State failed its burden under *Bruen*; (3) the statute is facially vague and structurally incoherent compared to federal standards; and (4) the challenge is now **unrebutted** and ripe for summary adjudication.

**Plaintiff,** further moves for a permanent injunction against the enforcement of 47 C.F.R. § 73.4280(b)-(d) as to all non-commercial educational (NCE) and Amateur Radio applicants, finding the regulation is functionally a content neutral prior restraint on protected speech in

violation of the Major Questions Doctrine, is  facially void for vagueness and a violation of the

Non-Delegation Doctrine.[16]

## VI.  LCvR 7(m) CERTIFICATE OF CONFERRAL

Pursuant to Local Civil Rule 7(m), Plaintiff certifies that he conferred in good faith with

counsel for the Federal (FCC) and State (Oklahoma) Defendants on January 2, 2026; counsel for

all Defendants stated they object to the relief requested.  A copy of the conferral communication

is attached hereto as Exhibit 1.  A proposed Order has been attached to this motion.


Respectfully submitted,

Dated: January 6, 2026


*/s/ Donald R. Cowan*
Donald R. Cowan, B.S.
Criminal Justice Administration & Ethics
*(Constitutional & Procedural Law Focus)*
Pro Se for the Plaintiff
3768 SE 48th PL, Oklahoma City,
Oklahoma 73135 | (405) 708-1756
Email: Cowan.Radio@gmail.com

---

[16] Plaintiff brings this as a **Facial Challenge** under the **Major Questions Doctrine**, asserting that the FCC's Character Policy is void in *all* its applications to NCE and Amateur Radio licensing for lack of clear Congressional authorization. While the Defendants may argue a *pro se* litigant cannot represent a class, a finding of facial invalidity requires an agency-wide remedy to prevent inconsistent regional outcomes. Furthermore, as a **Veteran** who has spent a lifetime in defense of the Constitution, Plaintiff possesses a unique qualification to speak on the defense of the People's rights. This standing is not merely as a litigant, but as a citizen-soldier ensuring that the "Moral Veto" of an agency does not supersede the First Amendment protections he swore an oath to defend.

## CERTIFICATE OF SERVICE

I hereby certify that on this **January 6, 2026**, a true and correct copy of the

foregoing ***"PLAINTIFF'S MOTION FOR ENTRY OF FINDINGS REGARDING THE***

***RULE 5.1 CONSTITUTIONAL QUESTION AND RIPENESS OF SUMMARY***

***JUDGMENT"*** was served upon all counsel of record in this case via the Court's Electronic

Case Filing (ECF) system.  The ECF system will generate and send a Notice of Electronic

Filing (NEF) to the following parties and their counsel:

**Jesse S. Ogle** | Assistant Oklahoma Attorney General
Oklahoma Attorney General, OK Bar No. 34275
Attorney for Viki Behenna and Steven Kunzweiler
313 NE 21st Street, Oklahoma City, OK 73105
Telephone: 405.522.2921| jesse.ogle@oag.ok.gov

**KEVIN L. MCCLURE** | Assistant Oklahoma Attorney General
Oklahoma Attorney General, OBA# 12767
Litigation Division
313 NE 21st Street
Oklahoma City, OK 73105
Telephone: (405) 521-3921
Facsimile: (405) 521-4518
Email: Kevin.McClure@oag.ok.gov
Attorney for Defendant Vicki Behenna and Steven
Kunzweiler

**Derrick A. Petit** | Assistant United States Attorney
Civil Division, U.S. Attorney's Office, D.C. No. 144466
Attorney for the Federal Communications Commission
601 D Street, NW, Washington, D.C. 20530
Derrick.Petit@usdoj.gov
(202) 252-7269

*/s/ Donald R. Cowan*
Donald R. Cowan, B.S.
Criminal Justice Administration & Ethics
*(Constitutional & Procedural Law Focus)*
Pro Se for the Plaintiff
3768 SE 48th PL, Oklahoma City,
Oklahoma 73135 | (405) 708-1756
Email: Cowan.Radio@gmail.com