# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Donald R. Cowan,                             )
           Plaintiff,                        )
                                  )
          v.                                )      Case No. 1:24-CV-03099-ACR
                                  )
Federal Communications Commission, et al.  )
                                  )
                                  )
Defendants.                                  )

### PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 7(h), Plaintiff

Donald R. Cowan, *pro se*, respectfully moves this Court for an entry of Summary Judgment

against the Federal Communications Commission ("Commission" or "FCC").

As established in the **Second Amended Complaint (SAC)** and proven by the attached

Statement of Undisputed Material Facts , the Commission's "Character Policy" is a structural

constitutional failure rooted in the **May 10, 1990 Policy Statement**.  The Commission has

admitted to a "standardless patchwork" (ECF No. 88, Tr. 14) and a lack of "expertise" in the state

laws it purports to adjudicate, while its own staff confirmed years ago that Plaintiff's application

was "ready for review."  By attempting to adjudicate First Amendment rights based on a federal

statute that was already repealed when the policy was adopted (**Footnote 2, citing 18 U.S.C. § 1**)

and a state statute the State of Oklahoma has defaulted on defending (Doc. 71), the Commission

has exceeded its statutory authority under **47 U.S.C. § 308(b)**.  Furthermore, the Commission has

assumed the role of an unauthorized moral arbiter without a clear Congressional mandate, in

violation of the Major Questions Doctrine.  The Commission's attempt to gatekeep licensing based on a "moral judgment" of the type of felony committed—rather than a technical regulatory nexus—is a policy determination reserved exclusively to Congress.  There is no genuine dispute of material fact, and Plaintiff is entitled to judgment as a matter of law.

Dated: March 31, 2026

Respectfully Submitted,

*/s/ Donald R. Cowan*
Donald R. Cowan, B.S.
Criminal Justice Administration & Ethics
*(Constitutional & Procedural Law Focus)*
Pro Se for the Plaintiff
3768 SE 48th PL, Oklahoma City,
Oklahoma 73135 | (405) 708-1756
Email: Cowan.Radio@gmail.com

<u>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S**</u>

<u>**CROSS-MOTION FOR SUMMARY JUDGMENT**</u>

## I.  INTRODUCTION

This action, led by a Petitioner trained in **Criminal Justice Administration and Ethics at Mid-America Christian University**, has exposed a total collapse of administrative candor. The Commission is currently suppressing a First Amendment right based on the **May 10, 1990 Policy Statement**—a document that represents a **radical and illegal expansion** of the Commission's reach into state-level crimes.  This **mission creep**, targeting conduct with no regulatory nexus to the FCC's mission, is built upon a "phantom" federal statute.  Summary judgment is mandated because the Agency admits it possesses no intelligible principle to govern its 1,000-day delay, converting the "Public Interest" into an unconstitutional moving target and a legal nullity.  ***Ultimately, "character" is a subjective term that must be defined by the People's representatives in Congress, not by an administrative agency acting as a self-appointed moral arbiter.***  By choosing to moralize specific classes of felonies without statutory guidance, the Commission has abandoned its role as a technical regulator in favor of becoming a super-legislative board of ethics.

## II.  PRELIMINARY STATEMENT RE: JURISDICTION

As a preliminary matter, the jurisdictional arguments raised by the Commission in its Motion to Dismiss—including challenges regarding the Hobbs Act and administrative exhaustion—have been fully addressed and refuted in Plaintiff's Opposition to Defendants' Motion to Dismiss [ECF Doc. No. TBD].  Because this Court retains jurisdiction under the Axon

doctrine for these "wholly collateral" structural challenges, the record is now ripe for the entry of Summary Judgment as a matter of law.

## III.  JURISDICTION IS PROPER UNDER THE *AXON* DOCTRINE

As alleged in the SAC [ECF Doc. 93], this Court has jurisdiction because Plaintiff's challenge is "wholly collateral" to any administrative proceeding.  *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023).  Plaintiff is not merely appealing a license delay; he is challenging the **structural constitutionality** of an agency operating without an "intelligible principle" and beyond its statutory "organic" authority.   Under the Axon framework, further administrative "exhaustion" is futile because the injury is structural; the Commission's standardless process is itself the punishment.  To suggest that Plaintiff must seek a voluntary Petition for Rulemaking as a remedy is a legal nullity, as the Commission has already signaled through its 1,031-day delay that it does not take the Petitioner's constitutional rights seriously.  For a more detailed analysis of why the Hobbs Act does not bar this action, Plaintiff respectfully refers the Court to Section II(A) of Plaintiff's Opposition to Defendants' Motion to Dismiss [ECF Doc. No. TBD].

## IV.  ARGUMENT

***A.  The Lack of an "Intelligible Principle" Under 47 U.S.C. § 308(b)*** While Section 308(b) allows the Commission to consider "character," it does not grant the Agency the power to invent a "Moral Veto" on an ad hoc basis.   "Character" is a subjective term; without a definition provided by Congress, the Commission is exercising a power it does not possess.  The Commission's focus on the "type" of felony committed serves as an admission that it is not evaluating regulatory fitness but rather passing a subjective public policy judgment—a power never delegated by the Communications Act.  The Commission admitted on the record that it is "not experts" and lacks a uniform definition for the crimes it purports to adjudicate [March 4,

2026 Pre-Motion Conference,  ECF Doc  88, Tr. 14].  This creates a "moving target" for the Public Interest, in violation of the **Non-Delegation Doctrine**.  Without a defined standard, the Commission's "discretion" is indistinguishable from the "standardless patchwork" it admitted to during the March 4, 2026, Pre-Motion Conference.

B. ***The "DeJesus Admission" Proves the Delay is Willful and Bad Faith*** Internal communications from **Mindy DeJesus** [ECF Doc. 1-1; SAC ¶ 12] confirm the Agency possessed all necessary records and the file was "ready for review" as early as 2023.  The Commission's subsequent admission that it is still **"determining how to handle"** the type of offense  [March 4, 2026 Pre-Motion Conference, ECF Doc. 88, Tr. 14-15] not only proves they are stalling to invent *post-hoc* policy, a violation of the **Administrative Procedure Act**, but also a willful rejection of the 'Strict Nexus Standard' Plaintiff formally presented to the Commission as a regulatory solution on December 29, 2025.

C. ***The "Footnote 2" Legal Nullity: Illegal Expansion and Mission Creep*** The **May 10, 1990 Policy Statement**  defines "felony" in **Footnote 2** by citing **18 U.S.C. § 1** [ECF Doc. 75-1].  Notably, 18 U.S.C. § 1 was **repealed in 1984**—six years *before* the policy was even adopted.  By building a regulatory framework on a defunct legal relic, the Commission has engaged in **radical mission creep**, illegally expanding its character assessment into state-level crimes that have no nexus to the regulatory mission of the FCC.  An agency cannot provide "Fair Notice" of a standard if the standard is a "Phantom Statute."  This reliance renders the current investigation a legal nullity and an unconstitutional prior restraint.

D. ***The 1990 Expansion is Procedurally Void for Lack of Notice and Comment*** The 1990 Expansion (5 FCC Rcd 3252) is a substantive rule disguised as a "policy statement." Under **5 U.S.C. § 553**, substantive changes to applicant rights require formal Notice and

Comment.  By unilaterally expanding the 1986 "nexus-based" standard to include "all felonies" without public participation, the Commission bypassed the very procedural safeguards designed to prevent the use of repealed statutes (18 U.S.C. § 1).  This procedural shortcut allowed a "standardless patchwork" to be encoded into federal policy without the "hard look" required by the APA.  Consequently, the 1990 Statement is procedurally defective and must be set aside under **5 U.S.C. § 706(2)(D)**.

E.  ***The Rule 5.1 Default and the Tenth Amendment*** Plaintiff challenged the constitutionality of 21 O.S. § 711 under **Fed. R. Civ. P. 5.1**.  The State of Oklahoma defaulted [ECF Doc. 71].  The Commission cannot "inherit" or enforce a void state judgment to sustain a federal licensing bar, nor can it ignore the sovereign default of a State regarding its own statutes.  This Court's finding of ripeness is bolstered by the fact that the State of Oklahoma has fundamentally abandoned the underlying statute (21 O.S. § 711).  Despite formal notice under Rule 5.1, the State defaulted on its defense [ECF Doc. 71].  The Commission cannot claim to be 'evaluating' a conviction under a state statute that the State itself refuses to defend in federal court.  To allow the Commission to continue this inquiry is to allow a federal agency to enforce a 'moral judgment' based on a legally orphaned state law.

F.  ***Violation of the Major Questions Doctrine***

The Commission's "Character Review" system functions as a prior restraint on speech without a clear Congressional mandate.  Under the Major Questions Doctrine, an agency cannot "discover" a vast power—such as the power to be a moral arbiter over the exercise of First Amendment rights—in vague statutory language.  Whether a citizen should be stripped of their ability to communicate over the airwaves based on non-regulatory criminal history is a question of profound social and political significance.  In the absence of a clear statement from Congress,

the Commission's assumption of this power is a structural constitutional violation.  If Congress

intended for the FCC to gatekeep licenses based on non-nexus state crimes using a repealed

federal statute, it would have stated so explicitly.

### G.  The WTXF-TV Precedent: A Judicial Admission of Limited Authority

The Commission's recent Order in Application of Fox Television Stations, LLC For

Renewal of License of WTXF-TV (DA 25-57, Jan. 16, 2025 – attached as [Exhibit 3] serves as a

binding admission of the constitutional limits of the Character Policy.  In that matter, the

Commission explicitly stated it ***"does not—and cannot and will not—act as a self-appointed,***

***free-roving arbiter of truth."*** (Id. at ¶ 2).  The Commission further ruled that a character inquiry

into a licensee's conduct would ***"implicate the very heart of speech that the First Amendment***

***is meant to protect... [and] run afoul of our obligations under the First Amendment."*** (Id. at ¶

2, 5).

The record reveals a stark "Double Standard" of administrative enforcement.  While the

Commission correctly invoked the First Amendment to shield a multi-billion dollar commercial

entity from a character inquiry involving a multi-hundred-million dollar defamation settlement, it

simultaneously uses the "standardless patchwork" [ECF Doc. 88 ; Tr. 14] of the 1990 Policy to

suppress the non-commercial hobbyist speech of this Plaintiff.

The Commission's recent refusal to revoke the license of *Fox Television Stations, LLC*

(DA-25-57, Jan. 16, 2025) provides the definitive evidence of arbitrary enforcement.  In that

matter, the Commission held that it **'cannot and will not'** act as a **'free-roving arbiter of truth'**

regarding character issues.  It correctly identified that using character evaluations to stall or deny

licenses would **'run afoul of our obligations under the First Amendment.'** [Exhibit 3].

The Commission is currently talking out of both sides of its mouth.  It wraps itself in the First Amendment to protect a media conglomerate from character inquiries, but uses a **'standardless patchwork'** [ECF Doc. 88, Tr. 14] to suppress the non-commercial speech of a single hobbyist.  This disparate treatment, occurring simultaneously with a 1,031-day delay, constitutes **Discriminatory Enforcement** and **Arbitrary and Capricious** agency action under 5 U.S.C. § 706.

Under the Administrative Procedure Act, an agency must treat similarly situated parties consistently.  By abdicating its role as a moral arbiter for a major network while weaponizing that same role against a pro se individual for a non-regulatory state conviction, the Commission has engaged in *Discriminatory Enforcement* and acted in an *Arbitrary and Capricious* manner.

### H.  Selective Enforcement, Equal Protection, and the Constitutional Shift

The Commission's 'Character Policy' is the epitome of arbitrary enforcement.  It is an open secret in administrative practice that the Commission routinely grants licenses to individuals with federal felony convictions for controlled substances—conduct that remains a federal crime.  Yet, when faced with a Plaintiff who exercised his fundamental right to self-defense under the Second Amendment, the Commission 'loses its technical mind' and initiates a 1,000-day moral audit.

An agency cannot, consistent with the Fifth Amendment's Due Process clause or the APA, ignore federal drug felonies while weaponizing state-level self-defense incidents.  This disparity proves that the 1990 Policy is not a technical standard; it is a mechanism for the Agency to act as a 'super-legislative board of ethics' (Introduction, Section I), choosing which 'types' of citizens are worthy of a First Amendment right based on the political optics of their past rather than their technical fitness to operate a radio.

Furthermore, the Commission is attempting to freeze the Plaintiff's character in a pre-*Heller* and pre-*Bruen* era.  The underlying incident occurred in a legal vacuum, before the Supreme Court reaffirmed that the right to bear arms for self-defense is an individual right deeply rooted in this Nation's history and tradition.

By maintaining a 1,000-day 'Moral Veto' based on an incident that predates the modern articulation of the Second Amendment, the Commission is engaging in a form of administrative retroactivity.  They are judging the Plaintiff's 'fitness' based on a version of the law that the Supreme Court has since discarded as unconstitutional.  To allow an administrative agency to use an obsolete, pre-*Bruen* lens to permanently chill a post-*Bruen* First Amendment right is a 'Major Question' (Section IV.F) that exceeds any authority granted to the Commission under 47 U.S.C. § 308(b).

## V.  INCORPORATION OF REGULATORY SOLUTIONS

As further detailed in the concurrently filed exhibits to this motion, Plaintiff has provided the Court and the Commission with a comprehensive "Strict Nexus Standard" [Exhibit 1] and a formal "Petition for Rulemaking" [Exhibit 2].  These documents, incorporated by reference into this Motion, provide a less restrictive alternative that focuses solely on Truthfulness and Spectrum Integrity, resolving the constitutional friction inherent in the current "standardless patchwork."

## VI.  CONCLUSION

The record is ripe for final adjudication.  Having cleared all jurisdictional hurdles raised by the Defendants, [Plaintiff's Opposition to MTD, ECF Doc. No. TBD], Plaintiff respectfully requests that the Court **GRANT** Summary Judgment, vacate the 1990 Policy Statement as

applied to this Plaintiff, and order the Commission to adopt the "Strict Nexus Standard" as set forth in **Exhibit 1** and supported by the **Administrative Petition** [Exhibit 2].

As the Commission recently affirmed in **DA 25-57 (Jan. 16, 2025)**, it ***"cannot and will not"*** act as a ***"free-roving arbiter of truth"*** or use character issues to ***"curtail freedom of the press."*** Plaintiff simply requests the same constitutional protection: that the Commission cease its role as a moral arbiter of his past and apply the technical "Strict Nexus Standard" mandated by the First Amendment.

The record is now closed. The Commission has admitted it lacks expertise; the State of Oklahoma has defaulted on the underlying law; and the Commission has already granted First Amendment immunity to commercial broadcasters for the very same 'character' concerns it uses to stall the Plaintiff. The 'Strict Nexus Standard' is the only constitutional remedy to resolve this administrative infinitude.

Plaintiff further requests that the Court enter a Final Judgment on a separate document pursuant to Fed. R. Civ. P. 58(a), providing the specific relief requested herein to ensure the immediate and final resolution of this administrative delay. A proposed Final Judgment has been attached.

Respectfully submitted,

Dated: March 31, 2026

*/s/ Donald R. Cowan*
Donald R. Cowan, B.S.
Criminal Justice Administration & Ethics
*(Constitutional & Procedural Law Focus)*
Pro Se for the Plaintiff
3768 SE 48th PL, Oklahoma City,
Oklahoma 73135 | (405) 708-1756
Email: Cowan.Radio@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this **March 31, 2026**, a true and correct copy of the foregoing

***"PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT"*** was served upon all

counsel of record in this case via the Court's Electronic Case Filing (ECF) system.  The ECF

system will generate and send a Notice of Electronic Filing (NEF) to the following parties and

their counsel:

**Derrick A. Petit** | Assistant United States Attorney
Civil Division, U.S. Attorney's Office, D.C. No. 144466
Attorney for the Federal Communications Commission
601 D Street, NW, Washington, D.C. 20530
Derrick.Petit@usdoj.gov
(202) 252-7269

> */s/ Donald R. Cowan*
> Donald R. Cowan, B.S.
> Criminal Justice Administration & Ethics
> *(Constitutional & Procedural Law Focus)*
> Pro Se for the Plaintiff
> 3768 SE 48th PL, Oklahoma City,
> Oklahoma 73135 | (405) 708-1756
> Email: Cowan.Radio@gmail.com